UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER JUSTIN EADS,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERAL BUREAU OF PRISONS, et al.,<br><br>    Defendants. | No. 19-cv-18394 (NLH) (JS)<br><br><br>OPINION |

APPEARANCE:

Christopher Justin Eads, 10391-028
Fairton
Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320

    Plaintiff Pro se

HILLMAN, District Judge

    Plaintiff Christopher Justin Eads, a federal prisoner presently incarcerated in FCI Fairton, New Jersey, filed an amended complaint under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act.  See ECF No. 11.  The Court screened the amended complaint and permitted it to proceed on February 20, 2020.  ECF No. 12.

    Plaintiff moves for the appointment of counsel in connection with the civil action.  ECF No. 9.  He has also filed

1

two motions for a temporary restraining order and preliminary injunction, ECF Nos. 3 & 10, a motion to expedite the Court's consideration of his request for emergency medical care, ECF No. 8, and a motion to supplement his motion for a temporary restraining order, ECF No. 16.

I.   BACKGROUND

Plaintiff is a convicted and sentenced federal prisoner presently incarcerated at FCI Fairton, New Jersey.  On June 12, 2018, Plaintiff was incarcerated in USP Tucson, Arizona when he was assaulted by his cellmate.  ECF No. 11 ¶ 12.  He was diagnosed with fractures to the nasal bones and maxillary frontal processes.  Id. ¶ 14.  Plaintiff was transferred to Fairton on July 9, 2018 and saw an ENT specialist shortly thereafter who indicated that Plaintiff should follow-up in 6 months for possible plastic surgery.  Id. ¶ 18; ECF No. 1-1 at 5.  The ENT also recommended a nasal hygiene regimen, such as saline spray.  ECF No. 1-1 at 5.  The Health Services department at Fairton recorded the recommendation from the ENT on July 17, 2018.  Id. at 6.  The exam noted Plaintiff's nose was "deviate[d] to [the] right" and had "minimal obstruction to [the] right nare."  Id. at 9.  Dr. Abigail Lopez de Lasalle indicated in Plaintiff's medical records that Plaintiff did not need an ENT follow-up as he would be treated in house.  Id.; ECF No. 11 ¶ 27.

Plaintiff was evaluated by an optometrist on August 2, 2018 as he was seeing "floating spots" and had the "occasional flash" in his left eye. ECF No. 1-1 at 19. The optometrist noted that: "The patient has no glasses, has less than 20/20 uncorrected vision and declined glasses at last visit in June 2018. Patient has had a refractive error which has preceeded [sic] this latest injury." Id. His "unaided visual acuity was noted to be 20/25 in the right eye, 20/30 in the left eye, and 20/25 in both eyes." Id. at 54. The optometrist concluded Plaintiff had an "[u]nspecified disorder of eye and adnexa" and scheduled Plaintiff for a follow-up visit on October 4, 2018. Id. at 19.

Plaintiff submitted a sick call slip on September 18, 2018 requesting treatment for his left eye. Id. at 20. He stated ibuprofen was not helping his pain and "[i]t feels like my eye is going to explode." Id. He submitted a second request on October 2, 2018 stating that the pain was getting worse. Id. at 21. A third request was sent on December 2, 2018. Id. at 22.

On December 4, 2018, Plaintiff sent a TRULINCS email to the Medical Department. Id. at 23. He reiterated his request to be seen by the optometrist and inquired about a third-party optometrist. Id. An unidentified Health Services worker responded on December 5, 2018: "You were evaluated in August for this condition and are scheduled for a follow-up visit in the

3

near future. You have already been evaluated by two different optometrists.  A [third] party optometrist will not be utilized at this time."  Id.

Plaintiff saw the optometrist again on January 10, 2019.[1] Id. at 24.  According to the medical records submitted with the complaint: "Patient reports that his symptoms have stabilized and are no worse.  He sees floating spots in os and occasional flash.  Patient was previously educated regarding the signs and symptoms of retinal tear or detachment.  Patient has none of these symptoms currently.  His condition has not worsened."  Id. The optometrist prescribed artificial tears for Plaintiff's eye. Id.  Plaintiff later submitted a TRULINCS message requesting that Dr. Lopez prescribe him pain medication.  Id. at 29.  He submitted a sick call request for pain medication on January 14, 2019.  Id. at 30.

Plaintiff saw a nurse practitioner on January 17, 2019. Id. at 32.  The records for that encounter indicate Plaintiff had been approved for a consult with a retina specialist.  Id. Plaintiff requested pain medication, but the nurse practitioner reviewed Plaintiff's commissary purchases "dating back to his

---

[1] It is not clear what happened to the October 4, 2018 visit scheduled by the optometrist on August 2, 2018, but later records suggest an appointment scheduled for December 21, 2018 was rescheduled to January 10, 2019 after Plaintiff allegedly did not report to the appointment.  See ECF No. 1-1 at 32.

4

arrival date at this institution (07/09/2018) and there are NO purchases of ANY commissary analgesic of any type noted." Id. (emphasis in original). Plaintiff was instructed to purchase pain medication from the commissary and was told he would be scheduled for an appointment in three weeks to assess their use. Id. at 34. Plaintiff submitted emails and sick call slips demanding pain medication as he had been using Ibuprofen he received from other inmates with no relief. Id. at 35-37. Health Services denied Plaintiff's request for pain medication on January 31, 2019 as "[t]he provider suggested that you use pain medication from commissary and she put you on the schedule for a follow-up visit in a few weeks to see how it worked. You have not purchased any medications from the commissary." Id. at 38.

On February 14, 2019, Plaintiff saw the retina specialist. Id. at 43. The specialist noted that "[t]he patient is unable to identify even the control color plate which is not consistent with his examination indicating he may have supratentorial vision loss." Id. at 44. He recommended that the prison conduct a formal visual field test. Id. "Given the prominent headaches and photophobia that the patient has experienced since his Injury, he may be suffering from a post-concussive syndrome." Id. He recommended a neurologic consultation. Id. Plaintiff saw a nurse upon his return to FCI Fairton. Id. at

5

39.  He reported an eight on the pain scale and stated he vomited twice due to light sensitivity.  Id.  On February 21, 2019, Plaintiff submitted a sick call slip requesting to be sent to the neurologist as the specialist recommended.  Id. at 40.  Health Services responded via TRULINCS that Plaintiff had not been approved to see a neurologist as "[t]he Clinical Director reviewed the notes from ophthalmology and your other medical records and determined that a Neurology consult was not indicated."  Id. at 45.

Plaintiff was seen in Health Services again on March 8, 2019.  Id. at 46.  The nurse recorded that Plaintiff had difficulty keeping his left eye open due to the light and there was tearing in the eye.  Id. at 47.  According to the records, Plaintiff had not purchased any pain medication from commissary "'because they don't work.'"  Id. at 46.  She informed Plaintiff that the visual field testing had been approved and reviewed the denial of his request for a neurologist with him.  Id.

Plaintiff had the field test on April 29, 2019.  Id. at 48.  According to the report: "The results in the left eye are not consistent with the patient's examination in that he demonstrates no RAPD and had a normal OCT.  In addition, he did not identify the control color plate OS.  These findings are suspicious for functional visual loss."  Id.

Plaintiff filed internal remedies for the treatment of his nose and left eye.  After those remedies were denied by prison officials, Plaintiff filed his original complaint on September 29, 2019.  ECF No. 1.  He also filed a motion for a temporary restraining order and preliminary injunction asking the Court to order the BOP to schedule him for an ENT visit and possible corrective surgery, medication at BOP expense, examine his left eye, schedule an neurological consultation, schedule a neuro-ophthalmology consultation, and order Dr. Lopez to stop violating his Eighth Amendment rights.  ECF No. 3 at 11.

Plaintiff filed a second motion for a preliminary injunction asking the Court to order the BOP to stop "scanning," "copying," or "duplicating" his mail from this Court.  ECF No. 10.  On March 5, 2020, Plaintiff filed a motion to supplement this preliminary injunction motion alleging that he was not receiving any mail from the Court.  ECF No. 16.

II.   STANDARD OF REVIEW

Appointment of counsel is a privilege, not a statutory or constitutional right, Brightwell v. Lehman, 637 F.3d 187, 192 (3d Cir. 2011), and is governed by the factors enumerated in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993).  In determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual

7

investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. See id. at 155-56, 157 n.5; see also Cuevas v. United States, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the Tabron factors).

To obtain preliminary injunctive relief, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) irreparable injury if the requested relief is not granted; (3) the granting of preliminary injunction will not result in greater harm to the non-moving party; and (4) the public interest weighs in favor of granting the injunction. Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017).

The Third Circuit recently clarified the standard for granting a preliminary injunction, explaining that "a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." Id. at 179. "If these

gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Id.

III. DISCUSSION

A.   Motion for Appointment of Counsel

Plaintiff moves for the appointment of pro bono counsel. ECF No. 9.

After considering and weighing the Tabron factors, the Court will deny Plaintiff's motion without prejudice. Plaintiff has presented his case in a coherent manner thus far. He has filed a complaint, an amended complaint, and several motions for the Court's consideration. He states that he has done so with the assistance of another inmate and claims that he will not be able to get more help, but he does not explain why this is the case. ECF No. 9 ¶ 3. The claims do not appear to be especially complex based on the face of the complaint, and the Court does not anticipate any special difficulty for Plaintiff in presenting his case. Plaintiff alleges he has claims against eight defendants, id. ¶ 4, but he has only named the United States, the BOP, and Dr. Lopez in his amended complaint.

Also weighing against appointing counsel is the fact that extensive discovery is not expected. The grievances submitted by Plaintiff should serve to establish his requests for medical

9

care, meaning the case would not be "solely a swearing contest." Parham v. Johnson, 126 F.3d 454, 460 (3d Cir. 1997). Whether Plaintiff was denied care entirely is a question that should not need expert testimony as his records should establish what care was provided. An expert may be needed in his claims against Dr. Lopez, and so this factor weighs slightly in favor of appointing counsel. As Plaintiff is proceeding in forma pauperis, the Court accepts that he cannot afford counsel on his own, which also weighs slightly in favor of appointing counsel. Plaintiff further alleges that his injuries prevent him from presenting his own case, but the Court sees no evidence of that given Plaintiff's voluminous filings with the Court.

The balance of factors weighs against appointing counsel at the outset of this case. The denial is without prejudice, and Plaintiff may move again for the appointment of counsel if his circumstances change.

B.   Temporary Restraining Order – Medical Care

Plaintiff also moves for expedited consideration of his temporary restraining order request regarding his medical care. ECF Nos. 8, 3. He asks the Court to order the BOP to schedule him for an ENT visit and possible corrective surgery; medication at BOP expense; an examination of his left eye; a neurological consultation; a neuro-ophthalmology consultation; and for an

order stopping Dr. Lopez from violating his Eighth Amendment rights, see ECF No. 3 at 11.

Although this Court has determined that certain of Plaintiff's claims are sufficient to survive screening and warrant a responsive pleading from Defendants, Plaintiff has received regular medical attention from the Bureau of Prisons for the injuries to his eye and nose.  See generally ECF No. 1-1.  Plaintiff has provided the Court with nothing but his own assertions that he is at risk of irreparable injury; the medical records do not indicate to the Court that Plaintiff needs immediate care.  Doctors are permitted to disagree "with the professional judgment of another doctor.  There may, for example, be several acceptable ways to treat an illness."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  One specialist specifically noted that his referral to a neuro-ophthalmologist was conditioned on the prison doctor's belief that "further evaluation is indicated[.]"  ECF No. 1-1 at 48.  Because Plaintiff has not satisfied the two gateway requirements, Plaintiff's motion is denied without prejudice at this time.

C.   Temporary Restraining Order – Court Mail

Plaintiff's second motion for a preliminary injunction concerns his mail from this Court.  ECF No. 10.  Plaintiff alleges the BOP has a pattern and practice of scanning his incoming mail from this Court, copying it, and giving him the

11

copies while retaining the originals.  <u>Id.</u> at 2-3.  All of this is done outside of his presence, and he is given no opportunity to inspect the original documents from this Court.  <u>Id.</u> at 3.  Plaintiff alleges the copies he has received are incomplete and do not reflect the documents filed on the docket.  For example, Plaintiff asserts he was given only a copy of the Notice of Electronic Filing for Magistrate Judge Schneider's January 9, 2020 order but not a copy of the order itself.  <u>Id.</u> at 4.

Plaintiff fails on both threshold issues for preliminary injunctions: a likelihood of success on the merits and irreparable injury.  <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 176 (3d Cir. 2017), <u>as amended</u> (June 26, 2017).  Mail from district courts is considered "special mail" only when certain requirements are met.  "The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked 'Special Mail—Open only in the presence of the inmate'."  28 C.F.R. § 540.18(a).

The envelopes the Clerk's Office uses to send mail do not contain the "special mail" marking.  <u>See</u> ECF No. 10 at 14.  "In the absence of either adequate identification or the 'special mail' marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail."  28 C.F.R. § 540.14(b).  <u>See also</u> <u>Schreane v. Holt</u>, 482 F. App'x

12

674, 677 (3d Cir. 2012). Because the Clerk's envelopes do not contain the language required by the BOP to qualify as "special mail," it is unlikely Plaintiff would prevail on the merits of any claim against the BOP for interference with his mail.

Moreover, Plaintiff has not alleged any irreparable injury. Plaintiff's assertions that communications from the court may be sensitive and should not be read by BOP officials are unavailing. "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998). "[W]ith minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987). He does not state why it is necessary for him to possess the original documents so long as he is provided with accurate and complete copies. To the extent Plaintiff alleges he has not received complete copies of the Court's orders or the actual order, as opposed to the Notice of Electronic Filing, he should bring the issue to the attention of the relevant prison authorities or he may request additional copies of court filings from the Clerk of the Court.[2]

---

[2] Should Plaintiff bring his concerns to the appropriate prison officials but continue to receive incomplete copies of the

13

Plaintiff's allegations that he has not received any mail from the Court since February 10, 2020 are contradicted by the record.  ECF No. 16 at 2.  This Court's order proceeding his complaint and U.S. Marshal Form 285 were mailed to Petitioner on February 20, 2020.  ECF Nos. 12 & 13.  Petitioner returned Marshal Form 285 on March 2, 2020, ECF No. 14, indicating he received his mail from this Court in a timely fashion.

IV.  CONCLUSION

For the reasons stated above, the motion for the appointment of counsel will be denied.  Plaintiff's motions for a temporary restraining order and preliminary injunction are denied without prejudice.  His motion to expedite consideration is dismissed.

An appropriate order follows.


Dated:  __April 16, 2020__              ___s/ Noel L. Hillman_____
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.

---

Court's orders or receives Notices of Electronic Filings without the accompanying orders and opinions throughout the course of the litigation, he may bring the issue to the Court's attention at that time.