UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER JUSTIN EADS,<br><br>       Plaintiff,<br><br>  v.<br><br>FEDERAL BUREAU OF PRISONS, et al.,<br><br>       Defendants. | No. 19-cv-18394 (NLH) (JS)<br><br><br>**OPINION** |

APPEARANCE:

Christopher Justin Eads, 10391-028
Fairton
Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320

    Plaintiff Pro se

Craig Carpenito, United States Attorney
Jane Dattilo, Assistant United States Attorney
United States Attorney's Office
970 Broad Street
7th Floor
Newark, NJ 07102

    Attorneys for Defendants

HILLMAN, District Judge

    Plaintiff Christopher Justin Eads, a federal prisoner presently incarcerated in FCI Fairton, New Jersey, is proceeding with an amended complaint under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and the

1

Federal Tort Claims Act.  See ECF No. 11.  The Court screened the amended complaint and permitted it to proceed on February 20, 2020.  ECF No. 12.

Plaintiff filed a motion for a preliminary injunction with his complaint asking the Court to order the Bureau of Prisons to provide immediate medical treatment for his broken nose and post-concussive syndrome.  ECF No. 3.  The Court denied this motion.  ECF No. 19.  Plaintiff filed a motion for reconsideration of that order on the grounds that he had been diagnosed with COVID-19 after the Court's order and was having exacerbated symptoms.  ECF No. 26.  On November 3, 2020, the Court granted Plaintiff's motion as COVID-19 is a respiratory illness and Plaintiff alleged his broken nose made it more difficult to breathe.  ECF No. 38.  The Court ordered Defendants to show cause why Plaintiff's request for immediate medical treatment should not be granted.  Id.

Defendants have filed their response with copies of Plaintiff's medical records.[1]  ECF No. 39.  They argue Plaintiff has been "largely, if not entirely, asymptomatic" from his diagnosis in June 2020.  Id. at 1.  "Even assuming that Plaintiff's COVID-19 infection did temporarily exacerbate his preexisting symptoms, as he alleges, the medical records make

---

[1] The Court will issue a separate order on Defendants' motion to seal the medical records.  ECF No. 41.

2

clear that BOP staff consistently monitored Plaintiff's condition." Id. at 4.

I. BACKGROUND

Plaintiff is a convicted and sentenced federal prisoner, presently incarcerated at FCI Fairton, New Jersey, who has been diagnosed with fractures to the nasal bones and maxillary frontal processes. ECF No. ¶ 14. An ENT specialist indicated in July 2018 that Plaintiff should follow-up in 6 months for possible plastic surgery. Id. ¶ 18; ECF No. 1-1 at 5. The Health Services department at Fairton recorded the recommendation from the ENT on July 17, 2018. ECF No. 1-1 at 6. The exam noted Plaintiff's nose was "deviate[d] to [the] right" and had "minimal obstruction to [the] right nare." Id. at 9. Dr. Abigail Lopez de Lasalle indicated in Plaintiff's medical records that Plaintiff did not need an ENT follow-up as he would be treated in house. Id.; ECF No. 11 ¶ 27.

Plaintiff was evaluated by an optometrist on August 2, 2018 as he was seeing "floating spots" and had the "occasional flash" in his left eye. ECF No. 1-1 at 19. The optometrist noted that: "The patient has no glasses, has less than 20/20 uncorrected vision and declined glasses at last visit in June 2018. Patient has had a refractive error which has preceeded [sic] this latest injury." Id. His "unaided visual acuity was noted to be 20/25 in the right eye, 20/30 in the left eye, and

3

20/25 in both eyes." Id. at 54. The optometrist concluded Plaintiff had an "[u]nspecified disorder of eye and adnexa" and scheduled Plaintiff for a follow-up visit on October 4, 2018. Id. at 19.

Plaintiff saw the optometrist again on January 10, 2019. Id. at 24. According to the medical records submitted with the complaint: "Patient reports that his symptoms have stabilized and are no worse. He sees floating spots in os and occasional flash. Patient was previously educated regarding the signs and symptoms of retinal tear or detachment. Patient has none of these symptoms currently. His condition has not worsened." Id. The optometrist prescribed artificial tears for Plaintiff's eye. Id. Plaintiff later submitted a TRULINCS message requesting that Dr. Lopez prescribe him pain medication. Id. at 29. He submitted a sick call request for pain medication on January 14, 2019. Id. at 30.

On February 14, 2019, Plaintiff saw a retina specialist. Id. at 43. The specialist noted that "[t]he patient is unable to identify even the control color plate which is not consistent with his examination indicating he may have supratentorial vision loss." Id. at 44. He recommended that the prison conduct a formal visual field test. Id. "Given the prominent headaches and photophobia that the patient has experienced since

4

his Injury, he may be suffering from a post-concussive syndrome." Id.  He recommended a neurologic consultation.  Id.

II.  STANDARD OF REVIEW

To obtain preliminary injunctive relief, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) irreparable injury if the requested relief is not granted; (3) the granting of preliminary injunction will not result in greater harm to the non-moving party; and (4) the public interest weighs in favor of granting the injunction. Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017).

The Third Circuit recently clarified the standard for granting a preliminary injunction, explaining that "a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." Id. at 179.  "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Id.

5

III. DISCUSSION

Plaintiff asks the Court to order the BOP to schedule him for an ENT visit and possible corrective surgery; medication at BOP expense; an examination of his left eye; a neurological consultation; a neuro-ophthalmology consultation; and for an order stopping Dr. Lopez from violating his Eighth Amendment rights, see ECF No. 3 at 11.  He complains of shortness of breath and alleges that his COVID-19 diagnosis exacerbates his conditions by making it difficult to breathe through his nose. ECF No. 26.

A request for injunctive relief in the prison context must be "viewed with considerable caution." Rush v. Corr. Med. Servs., Inc., 287 F. App'x 142, 144 (3d Cir. 2008).  "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." Id.  The Court has conducted its review of the complaint under 28 U.S.C. § 1915 and permitted Plaintiff's denial of medical care claim to proceed, so there is at least some merit to the claim.  However, Plaintiff has not shown he will be irreparably harmed if this Court does not enter a preliminary injunction at this time.

"[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future.  Rather, the moving party must make a clear showing of immediate irreparable harm." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d

6

Cir. 1992) (internal quotations omitted).  "Moreover, where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction."  Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP, 528 F.3d 176, 179 (3d Cir. 2008).

Plaintiff tested positive for COVID-19 on June 17, 2020, and since that time he has been in and out of Fairton's quarantine unit.  ECF No. 40 at 4-8.  According to the records provided by the BOP, Plaintiff was placed in quarantine on May 29, 2020; July 23, 2020; October 21, 2020; and November 3, 2020 because of exposure to symptomatic inmates.  Id. at 22.  Plaintiff's most recent visit for which the Court has records was November 10, 2020, at which time Plaintiff had a normal temperature and an oxygen saturation rate of 97 percent.  Id. at 2.  "Chest X-ray from 10/6/20 showed 'hyperinflated lungs without evidence for an acute cardiopulmonary process.'"  Id. at 3.  It therefore appears that Plaintiff is not in any immediate danger.

Based on the records provided to the Court, Plaintiff has not shown that his right to an order requiring the BOP to provide the requested treatment "is indisputably clear."  Hope v. Warden York Cty. Prison, 972 F.3d 310, 320 (3d Cir. 2020) (cleaned up).  Plaintiff may be having difficulty breathing

7

through his nose, but he has not provided evidence that he cannot breathe at all, i.e., through his mouth. "[]BOP staff continues to consistently evaluate Plaintiff's complaints of shortness of breath, including by physically examining Plaintiff on several occasions, checking his oxygen saturation level, ordering X-Rays of his lungs, ordering bloodwork, and encouraging Plaintiff to undertake psychological coping mechanisms." ECF No. 39 at 4; see also ECF No. 40 at 2-31. The possibility that Plaintiff may be harmed at some indefinite point in the future is not enough for this Court to issue a mandatory injunction. Plaintiff has not met his burden of showing he is in immediate danger of irreparable injury as required by Federal Rule of Civil Procedure 65.

IV. CONCLUSION

For the reasons stated above, the motion for preliminary injunction will be denied.

An appropriate order follows.


Dated: _November 25, 2020       ___s/ Noel L. Hillman____
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

8