**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER JUSTIN EADS, | 1:19-cv-18394-NLH-AMD |
| Plaintiff, | **OPINION** |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

**APPEARANCES**:

MICHAEL A. FERRARA, JR.[1]
THE FERRARA LAW FIRM
601 LONGWOOD AVENUE
CHERRY HILL, N.J. 08002

   *On behalf of Plaintiff*

JANE DATTILO
MARGARET ANN MAHONEY
UNITED STATE ATTORNEY'S OFFICE, DISTRICT OF NEW JERSEY
970 BROAD STREET, 7TH FLOOR
NEWARK, N.J. 07102

   *On behalf of Defendants*

---

[1] In a December 30, 2021 opinion and order the Court found that the interests of justice required that pro bono counsel be appointed for the limited purpose of procuring an affidavit of merit. (ECF 94 at 6-7; ECF 95). Counsel was appointed, (ECF 98; ECF 102), and obtained an affidavit of merit on January 10, 2023, (ECF 103). Plaintiff filed the pending motions while proceeding pro se. In a July 27, 2023 order, the Court relieved counsel appointed to procure the affidavit of merit and appointed present counsel "to represent Plaintiff in his prosecution of the claims asserted in this matter." (ECF 114). The Court thanks past and present counsel for their service.

**HILLMAN**, District Judge

Pending before the Court are Plaintiff Christopher Justin Eads's ("Plaintiff") motion for a temporary restraining order ("TRO") or protective order, (ECF 104), and supplemental motion for a TRO or protective order, (ECF 107).[2]  For the reasons set forth below, Plaintiff's motions will be denied.

I.  **Background**

Plaintiff has been incarcerated at Federal Correctional Institution ("FCI") Fairton in Fairton, New Jersey during the times relevant to this action.  (ECF 11 ¶ 4).  Plaintiff was allegedly assaulted by a cellmate while housed in a Special Housing Unit ("SHU") at United States Penitentiary ("USP") Tucson in Tucson, Arizona on June 12, 2018 and later taken to Tucson Medical Center where it was discovered that he had suffered injuries including fractured nasal bones and an unspecified issue with his left eye.  (Id. at ¶¶ 12-16).  Plaintiff was transferred to FCI Fairton on July 9, 2018.  (Id. at ¶ 18).

Plaintiff allegedly sought medical treatment upon his arrival at FCI Fairton and, after being seen by Dr. Rodolfo

---

[2] Plaintiff filed a substantially similar motion in a separate matter under Docket No. 21-cv-17369 originally assigned to Chief Judge Renée Marie Bumb.  That matter was thereafter reassigned to the undersigned.

Diaz, M.D., an ear, nose, and throat specialist, Plaintiff was to use a saline nasal spray or Mucinex to treat his nose and receive a follow-up six months later to evaluate whether surgery was necessary to address a deviated septum and Plaintiff's trouble breathing through his right nostril.  (Id. at ¶¶ 18-24, 117-121).  Plaintiff alleges that he was not prescribed the saline nasal spray or Mucinex or sent for a follow-up to determine whether surgery was necessary.  (Id. at ¶¶ 30-40, 122).

Relatedly, Plaintiff alleges that Dr. Francis Sieber documented that Plaintiff had "floaters" in his eyes and scheduled an eight-week review on August 2, 2018.  (Id. at ¶ 51).  Despite trouble seeing out of his left eye and pain, Plaintiff alleges that he was not treated.  (Id. at ¶¶ 51-60). Plaintiff was evaluated by Dr. Sieber again on January 10, 2019, prescribed artificial tears, and scheduled for an ophthalmological consultation, but thereafter – despite issues including poor vision, pain, nausea, vomiting, and headaches – he was not treated with pain medication beyond the ibuprofen available in the commissary.  (Id. at ¶¶ 61-86).  Plaintiff was seen by an outside ophthalmologist – Dr. Thomas I. Margolis, M.D. – on February 14, 2019, who documented decreased vision of an unknown cause and potential post-concussive syndrome and Plaintiff was purportedly recommended for a neurological

consultation, but was not sent for the consultation because it was not approved by the clinical director. (Id. at ¶¶ 87, 90-92, 100-02).

On April 5, 2019, Plaintiff reported for medical treatment but was informed that he was called in error and Defendant Dr. Abigail Lopez de LaSalle, M.D. allegedly confronted him and stated "we're treating you like this because you are an inmate." (Id. at ¶¶ 126-28).

Plaintiff was then examined by Dr. Lopez de LaSalle on April 12, 2019 and Dr. Margolis on April 16, 2019, the latter recommending – if FCI Fairton doctors believed it necessary – that Plaintiff be seen by a neuro-ophthalmologist for potential post-concussive syndrome. (Id. at ¶¶ 108-111, 130-33). Plaintiff was allegedly informed by Dr. Lopez de LaSalle – who was responsible for all of Plaintiff's evaluations, recommendations, and treatments – and a Dr. McGann that he would not be referred for a neurological consultation. (Id. at ¶¶ 134, 137).

The amended complaint brings counts of medical malpractice against the United States, (id. at ¶¶ 41-46, 93-95, 103-05, 112-14), arbitrary action by the Bureau of Prisons ("BOP"), (id. at ¶¶ 47-50, 96-99, 106-07, 115-16), and deliberate indifference to Plaintiff's serious medical need in violation of his Eighth Amendment rights by Dr. Lopez de LaSalle, (id. at ¶¶ 138-40).

4

The Court granted Plaintiff's motion to proceed in forma pauperis, (ECF 12), and – in a March 22, 2021 opinion and order – granted the BOP's motion to dismiss, (ECF 61 at 10; ECF 62). The Court has also denied multiple motions for TROs and preliminary injunctions filed by Plaintiff during the course of litigation seeking mandated medical care; for the BOP to refrain from scanning, copying, and retaining originals of his mail; and to not be transferred to another institution or retaliatorily placed in SHU. (ECF 18 at 10-14; ECF 19; ECF 43 at 7-8; ECF 44; ECF 61 at 10-13; ECF 62).

On February 6, 2023, the Court received a letter motion from Plaintiff seeking an emergency telephone conference to determine the appropriateness of a TRO or protective order, (ECF 104), and a supplemental motion seeking a TRO or emergency protective order was received on February 9, 2023, (ECF 107). Both motions are supported by the same general allegations: that Plaintiff issued subpoenas relating to his lawsuits on January 17, 2023 and – on that same day – he was called into the lieutenant's office by Lt. John Weiler[3] who proceeded to handcuff Plaintiff, kick him in the back, push his head into a wall, and spit on him before placing him in SHU in alleged retaliation for

---

[3] Though not named in the amended complaint here, Weiler is a named Defendant in the matter docketed under Docket No. 21-cv-17369. (1:21-cv-17369, ECF 13 at ¶ 5).

5

"extorting staff" by way of his legal actions. (ECF 104 at 1-2; ECF 107 at 2-3). Weiler allegedly told a SHU officer to "just kill" Plaintiff and when a fellow prisoner objected to being placed in a cell with Plaintiff, a SHU officer allegedly told the fellow prisoner that he could be moved only after he assaulted Plaintiff, which he did not do. (ECF 104 at 3; ECF 107 at 3-4).

Plaintiff claims that he has been told that he will be transferred in order to lose access to the court system and that his reporting of Weiler's assault and retaliation has been ignored by his unit manager, case manager, and other BOP staff. (ECF 107 at 4-5). He also claims that he has urinated blood and believes that he may have suffered a broken back or similar injury from the assault but has not received treatment. (ECF 104 at 2-3; ECF 107 4-5). The supplemental motion seeks relief including court orders mandating Plaintiff's release from SHU, his continued placement at FCI Fairton, immediate medical treatment, that BOP staff refrain from assaulting and retaliating against him, and that Weiler be prohibited from having direct contact with him. (ECF 107 at 5-6).

Plaintiff thereafter submitted the declaration of Casey Carson, who shared a cell in SHU with Plaintiff from January 25, 2023 to February 28, 2023, as an exhibit in support of his motions. (ECF 109; ECF 109-1 at ¶ 2). Carson attests that he

6

saw bruising and swelling on Plaintiff's lower back on January 26, 2023, Plaintiff urinate blood on February 2, 2023, and Plaintiff consistently exhibiting signs of a back injury including apparent pain, reduced mobility, and difficulty standing straight and placing weight on his left leg – which Plaintiff attributed to being assaulted by Weiler.  (ECF 109-1 at ¶¶ 3-5, 10).  Carson also states that he observed Plaintiff's unmet attempts to obtain medical treatment and report the alleged assault and witnessed the unit manager, Sue Robinson, inform Plaintiff that he had been placed in SHU due to an investigation related to his pending lawsuits and that he was to remain in SHU for as long as possible and would testify to such. (Id. at ¶¶ 6-9, 12, 14).

In a letter received by the Court on March 24, 2023, Plaintiff echoed that he had been informed by Robinson that he was placed in SHU due to an investigation initiated by Weiler and stated that he believed that his placement in SHU for no apparent reason was retaliatory.  (ECF 112 at 1-3).  The letter sought additional relief including orders that he remain housed at FCI Fairton and be released from SHU immediately.  (Id. at 3-4).

Defendants filed a letter in opposition in response.  (ECF 108).  On July 27, 2023, the Court appointed counsel for Plaintiff.  (ECF 114).

**II. Discussion**

   **A. Jurisdiction**

The Court exercises original jurisdiction over Plaintiff's claim against Dr. Lopez de LaSalle alleging violation of his Eighth Amendment rights and his claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346.  See 28 U.S.C. § 1331.

   **B. Preliminary Injunctions**

The Court interprets Plaintiff's requests for "an emergency telephone conference call between the parties and the Court, to determine whether a [TRO] and protective order is warranted . . . ," (ECF 104 at 1), and a "[TRO] or some kind of emergency protective order against the BOP" and "emergency telephone conference call between myself and the United States so that I may fully address the need for a TRO/Protective Order," (ECF 107 at 1), as a motion for a preliminary injunction, see Miller v. Ortiz, No. 17-1675, 2017 WL 1100880, at *1 (D.N.J. Mar. 22, 2017) (interpreting a "self-styled 'Emergency Motion for Temporary Order of Protection'" as a prisoner-civil-rights complaint and motion for a preliminary injunction); see also Robertson v. Samuels, 593 F. App'x 91, 92-93 (3d Cir. 2014) (finding that the prisoner's motion seeking medical care and transfer to a different facility was appropriately considered as a motion for a preliminary injunction).  Preliminary

8

injunctions, like TROs, are governed by Federal Rule of Civil Procedure 65 and the same general standards.  See Fed. R. Civ. P. 65; Otsuka Pharm. Co., Ltd. v. Torrent Pharms. Ltd., Inc., 99 F. Supp. 3d 461, 475 (D.N.J. Apr. 16, 2015).

Courts determine whether a preliminary injunction should be issued by considering: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether irreparable harm would result if the relief sought is not granted; (3) whether the relief would result in greater harm to the non-moving party, and (4) whether the relief is in the public interest."  Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty., 39 F.4th 95, 102-03 (3d Cir. 2022) (quoting Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002)). The first two factors are "threshold[s]" and, after they have been satisfied, courts move on to the latter two prongs to determine whether, on the balance, the four factors favor injunctive relief.  See Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment, 404 F. Supp. 3d 889, 912 (D.N.J. July 31, 2019) (quoting Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017)).  "The 'failure to establish any element . . . renders a preliminary injunction inappropriate.'"  Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205, 210 (3d Cir. 2014) (omission in original) (quoting NutraSweet Co. v.

9

Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999)).

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances,'" id. (quoting Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002)), and district courts possess considerable discretion in making such determinations, see McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012) ("We will affirm the District Court's denial of preliminary injunctive relief 'unless the court abused its discretion, committed an obvious error of law, or made a serious mistake in considering the proof.'" (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 90 (3d Cir. 1992))). "[A] request for injunctive relief in the prison context must be viewed with great caution because of the intractable problems of prison administration." Bass v. Carroll, 251 F. App'x 75, 76 (3d Cir. 2007) (citing Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995)).

### III. Analysis

Defendants contend that the Court need not conduct traditional preliminary injunction analyses because Plaintiff's motions are legally deficient as they are unrelated to Plaintiff's underlying claims. (ECF 108 at 3 (citing Martin v. Keitel, 205 F. App'x 925, 928-29 (3d Cir. 2006)). The amended complaint refers to conduct that occurred in 2018 and 2019,

10

while the relief sought in Plaintiff's motions relates to allegedly retaliatory acts that took place in early 2023, were unrelated to the claims asserted in the amended complaint, and involved parties who are not Defendants in this action, according to Defendants.  (Id. at 3-4).

The Court finds merit in Defendants' argument and recognizes that "there must be 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" See Ball v. Famiglio, 396 F. App'x 836, 837 (3d Cir. 2010) (internal quotation marks omitted) (quoting Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010)).  It does not find such a relationship here.  Though Plaintiff's amended complaint alleges that he has received inadequate medical care for injuries to his eye and nose and his motions relate – in part – to a lack of treatment for his back injury, the Court concludes that these claims are distinct.  See id. at 838 (finding that most of the relief sought by the plaintiff's motion, relating to an alleged assault by an officer, search of her cell, and confiscation of her property, was unrelated to the lack of medical care alleged in her complaint); see also Moneyham v. Ebbert, 723 F. App'x 89, 92 (3d Cir. 2018) (determining that the district court was correct to deny the plaintiff's injunction request to bar a non-party physician assistant – who examined him for a possible blood clot in February 2017 – from making

11

medical decisions for him because it was unrelated to the allegations in his complaint claiming that he was placed in tight restraints for a prolonged time in November 2014 and February 2015 and was thereafter denied medical care); Gonzalez v. Zickefoose, No. 12-3711, 2015 WL 6407832, at *2 (D.N.J. Oct. 22, 2015) (denying the plaintiff's request for a preliminary injunction, in part, because it related to parties who were not named as defendants and medical conditions different from those alleged in the complaint).

Here, the amended complaint alleges failure to adequately treat facial injuries in 2018 and 2019 that were caused by an assault by Plaintiff's cellmate in Tucson in 2018, (ECF 11), while Plaintiff's motions allege retaliatory assault and placement in SHU and failure to treat his assault-related back injuries, (ECF 104; ECF 107).  The Court therefore concludes that there is not a relationship between the injury alleged in Plaintiff's motion and the conduct central to the amended complaint.  See Ball, 396 F. App'x at 837.

Even if the Court was to hold otherwise, it finds that Plaintiff is unable to satisfy the four-prong analysis for issuing a preliminary injunction.

Acknowledging that Plaintiff has taken the substantial step of procuring an affidavit of merit, (ECF 103), the Court finds that Plaintiff has nonetheless inadequately demonstrated that,

12

to the extent that the Court may grant the relief requested,[4] he faces irreparable harm if it does not.  See Rivera v. Pa. Dep't of Corr., 346 F. App'x 749, 750 (3d Cir. 2009) (affirming denial of the plaintiff's motion for a preliminary injunction due to the plaintiff's failure to show that his medical condition placed him in danger of immediate harm or that his alleged assault at the hands of prison guards could not be remedied upon a final determination on the merits); see also Curran v. Hollingsworth, No. 15-2770, 2015 WL 3875544, at *2 (D.N.J. June 23, 2015) ("[A] district court has no power to dictate or impose any place of confinement for the imprisonment portion of the sentence." (alteration and emphasis in original) (quoting United States v. Serafini, 233 F.3d 758, 778 n. 23 (3d Cir. 2000))); Montgomery v. Aparatis Dist. Co., No. 13-5382, 2014 WL 1340033, at *8 (D.N.J. Apr. 1, 2014) ("[C]ourts have been reluctant to accept inmate invitations to use preliminary injunctions as a

---

[4] Though, for the reasons described above, the Court finds that it may not dictate where Plaintiff is housed, it further notes that Plaintiff filed a notice of change of address received by the Court on September 12, 2023 indicating that, as of August 28, 2023, he is being housed at FCI Butner in Butner, North Carolina.  (ECF 120).  This location is confirmed by a search of the "Find an Inmate" feature on the Bureau of Prisons website.  The Court notes that a federal medical center is located on the Butner Federal Correctional Complex.  The Court also notes that to the extent his application is premised on the claim that he faces future retaliation from Weiler and other staff at FCI Fairton, his transfer moots such an allegation.

13

means to judicially prescribe specific medical courses of treatment for prisoners, and have typically declined such requests citing the inmate's failure to demonstrate irreparable harm.").

The Court's conclusion here as to this threshold factor is consistent with its prior ruling in which it denied Plaintiff's request for a TRO and preliminary injunction – despite concluding that Plaintiff asserted claims warranting responsive pleading – because he did not show that he was not receiving medical attention or that he was at risk of irreparable injury. (ECF 61 at 12).

In addition to failing to satisfy the threshold factor here, the Court notes that granting the relief requested would likely harm Defendants and be contrary to the public interest. See Curran, 2015 WL 3875544, at *2 (concluding that an order precluding a prisoner's transfer would interfere with the administration of prison facilities and would not be in the public interest); see also Boretsky v. Corzine, No. 08-2265, 2009 WL 1357233, at *5 (D.N.J. Jan. 16, 2009), report and recommendation adopted, 2009 WL 1312701 (D.N.J. May 11, 2009) ("The public interest is better served when prisons are run efficiently and operated by prison officials." (quoting Howard v. Skolnik, No. 2:08-CV-00728, 2008 WL 4568033, at *4 (D. Nev. Oct.8, 2008))).

In sum, the Court holds that Plaintiff's motions fail to relate to the conduct alleged in his amended complaint and are therefore legally deficient. It further finds that Plaintiff has not met his burden in demonstrating that a preliminary injunction is warranted. In so doing, the Court does not commentate on the merits of Plaintiff's claims of abuse and retaliation. Rather, it concludes that relief would most appropriately be sought through amendment or the filing of a separate action.

## IV. Conclusion

For the reasons stated above, Plaintiff's motions, (ECF 104; ECF 107), will be denied. An Order consistent with this Opinion will be entered.

Date: September 27, 2023         s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.